UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON APPLEWHITE,

        Plaintiff,

v.

                                                                          Civil Case No. 17-11132
                                                                   Honorable Linda V. Parker

FCA US LLC, a Delaware limited liability
Company,

       Defendant.
_____/

## OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO STRIKE DECLARATION OF UNDISCLOSED WITNESS (ECF NO. 97) AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 72)

On April 11, 2017, Plaintiff Damon Applewhite, an African-American assembly plant worker who was medically-restricted from using his left arm, brought this action against Defendant FCA USA LLC ("FCA") alleging disability discrimination, failure to accommodate, retaliation, and race discrimination. (ECF No. 1.) Presently before the Court are Defendant's Motion for Summary Judgment, (ECF No. 72), and Motion to Strike Declaration of Undisclosed Witness, (ECF No. 97.) The parties fully briefed and the Court held a hearing with respect to the motions. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion for Summary Judgment, and denies Defendant's Motion to Strike as moot.

# FACTUAL BACKGROUND

Plaintiff has worked in FCA's Warren Truck Assembly plant off and on since 1993. (ECF No. 72-2 at Pg. ID 766.) For the past eight years, he has worked as a Floater in the Quality Inspection Center, reporting to Terry Wyka—the Quality Control Supervisor. (*Id.* at Pg. ID 768, 772.)

Floaters work some of many quality inspection tasks during the course of their employment. (*Id.* at Pg. ID 771.) These tasks include, among others, "exterior," "interior," "underbody" (the pit), "Buzz/Shake/Rattle (BSR)," "underhood," "trim," "door line," "electrical," and "buy off." (ECF No. 77-9; ECF No. 72 at Pg. ID 731.) Supervisors use flex charts, which indicate the tasks for which an employee previously received training, to assign Floaters to open tasks at the beginning of each shift. (ECF No. 72-2 at Pg. ID 773-75.) Employees receive additional on-the-job training as needed and must complete each assigned task before the next truck comes down the line. (*Id.*; ECF No. 72 at Pg. ID 732.)

Plaintiff injured his left arm in 2002 at the FCA assembly plant. (ECF No. 72-2 at Pg. ID 789.) As a result, doctors prohibited Plaintiff from using his left arm. (*Id.*) It is unclear how often Plaintiff performed his assignments within his restriction (using only the right arm) and how often he performed them despite his restrictions (using both arms).

On May 2, 2016, a supervisor (not Mr. Wyka) assigned Plaintiff to the Door Line. (*Id*. at Pg. ID 795.) After using his left arm for a period of time, Plaintiff informed Mr. Wyka that working the Door Line caused pain. (*Id.* at 795-98.) Mr. Wyka moved Plaintiff to BSR, where Plaintiff worked for the remainder of the shift without complaint. (*Id.*) The next day, May 3, Mr. Wyka assigned Plaintiff to the Door Line. (*Id.*) Plaintiff informed Mr. Wyka of his left arm restriction. (*Id.*) Mr. Wyka moved Plaintiff to BSR and the record does not suggest that Plaintiff complained thereafter. (*Id.*) Mr. Wyka also checked FCA's medical system to confirm the restriction. (*Id.*) Mr. Wyka then consulted other FCA Supervisors and they determined that all quality inspection tasks require the use of two arms. (ECF No. 72-4 at Pg. ID 913.) Plaintiff was invited into an office and told that no work was available for him. (*Id.* at Pg. ID 900.) Plaintiff stated that he could perform some available quality inspection tasks, including BSR. (ECF No. 72-2 at Pg. ID 780-81, 790.) Still, Defendant sent Plaintiff home and placed him on medical leave with sick and accident benefits. (ECF No. 72-12 at Pg. ID 1096.)

On May 10, while on leave, Plaintiff filed an EEOC Charge alleging race and disability discrimination. (ECF No. 72-18.) Also while on leave, Plaintiff provided FCA with periodic updates from his doctor regarding his condition. (ECF No. 72-2 at Pg. ID 804.) In February 2017, Plaintiff's doctor lifted his restriction and he returned to FCA that month. (*Id.*)

3

On April 11, 2017, Plaintiff filed this suit. (ECF No. 1.) Count I alleges disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), and Count II alleges the same under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). Count III alleges Defendant retaliated against Plaintiff following his reasonable accommodation request in violation of the ADA, and Count IV alleges the same under the PWDCRA. Count V alleges Defendant committed race discrimination by treating him differently than Caucasian workers as it relates to performance assessment, training, and work assignments in violation of Title VII, and Count VI alleges the same under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").

## MOTION TO STRIKE

On May 31, 2019, Plaintiff filed his response in opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 77.) The response includes the declaration of Jerel Brooks ("Jerel Brooks Declaration"). (ECF No. 77-15.) The Parties do not dispute that Plaintiff did not identify Mr. Brooks in Plaintiff's initial disclosures, in his response to Defendant's discovery requests, or during his deposition. The Parties also do not dispute that Plaintiff failed to timely supplement his disclosures and responses.

Defendant argues that the Court should strike the Jerel Brooks Declaration because Plaintiff's failure to disclose and timely supplement his responses were not

substantially justified or harmless, and Mr. Brooks's testimony was not otherwise made known to Defendant. (ECF No. 97 at Pg. ID 1549, 1555.)

As the Court did not consider the Jerel Brooks Declaration in deciding Defendant's Motion for Summary Judgment, it denies as moot Defendant's Motion to Strike.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

5

U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

**COUNTS I & II:**
**VIOLATION OF THE ADA & PDCRA**
**(DISABILITY DISCRIMINATION)**
**(DENIAL OF REASONABLE ACCOMMODATION)**

Plaintiff argues that Defendant violated the ADA and PDCRA by placing him on involuntary medical leave and failing to accommodate his disability. (ECF No. 77 at Pg. ID 1192.) The Parties do not dispute that the resolution of a plaintiff's ADA claim will generally resolve the plaintiff's PDCRA claim since the PDCRA substantially mirrors the ADA. *See Cotter v. Ajilon Serv., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002), *overruled on different grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 313 (6th Cir. 2012).

6

"To recover on a claim for discrimination under the ADA, a plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (citation omitted).

Similarly, to establish a *prima facie* case of failure to provide reasonable accommodation, a plaintiff must show that "(1) she is disabled . . .; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City School Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011) (citation omitted).

*Did Defendant Discriminate Against Plaintiff Based on His Disability?*

The Court's analysis as to the disability discrimination claim begins and ends with the second element of Plaintiff's *prima facie* case because genuine issues of material fact remain as to whether Plaintiff was "otherwise qualified" for the Floater position.

"An ADA plaintiff is 'otherwise qualified' if he is disabled but nonetheless, 'with or without reasonable accommodation, can perform the essential functions of the employment position [he] holds or desires.'" *Kiphart v. Saturn Corp.*, 251

F.3d 573, 584 (6th Cir. 2001) (alteration in original) (quoting 42 U.S.C. § 12111(8)). "A job function is essential if its removal would 'fundamentally alter' the position." *Id.* (quoting 29 C.F.R. § 1630.2(n) app. at 356). "Whether the removal of the job function would fundamentally alter the position is determined by looking at such factors as":

    (i) The employer's judgment as to which functions are essential;

    (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

    (iii) The amount of time spent on the job performing the function;

    (iv) The consequences of not requiring the incumbent to perform the function;

    (v) The terms of a collective bargaining agreement;

    (vi) The work experience of past incumbents in the job; and/or

    (vii) The current work experience of incumbents in similar jobs.

*Id.* at 584-85.

"[T]he determination of whether a given function is 'essential' within the meaning of the ADA . . . is typically a question of fact and thus not suitable for resolution through a motion for judgment as a matter of law . . . ." *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998).

Defendant argues that *all* of the quality inspection assignments require the ability to use two arms, making the use of two arms an "essential function" of the

Floater position. (ECF No. 72 at Pg. ID 734-35, 748.) Because "Plaintiff was medically precluded from using his left arm," Defendant contends he was not "otherwise qualified" as defined by the ADA. (*Id.* at Pg. ID 722.)

Plaintiff argues that he was "otherwise qualified" because the Floater position includes numerous potential quality inspection assignments and not all of them require the use of two arms. Thus, his "inability to perform one particular assignment for medical reasons—Door Line—" does not mean he was unable "to perform many other open Floater assignments," making the use of two arms a non-essential function of the Floater position. (ECF No. 77 at Pg. ID 1216-17.)

The resolution of this claim turns on a single two-part fact question: What specific quality inspection assignments does the Floater position encompass and do *all* of these quality inspection assignments require the use of two arms? If the answer to the latter portion of this question is "no," a reasonable jury could find that Defendant discriminated against Plaintiff based on his disability.

Notably, Defendant analyzes only one of the seven aforementioned factors in support of its summary judgment motion—specifically, the FCA supervisors' conclusion that all tasks require two arms. But, "[a]t the summary judgment stage, the employer's judgment will not be dispositive on whether a function is essential when evidence on the issue is 'mixed.'" *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014) (citation omitted).

9

Defendant does not dispute Plaintiff's assertion that he was able to and in fact did perform some of the quality inspection tasks *with his right arm only*, as required by his medical restrictions. (ECF No. 72-2 at Pg. ID 789 ("The only way I can do [a task] is with my right hand. If I'm able to do a job with my right hand and it's not a problem, then I do it.").) Rather, in response to this assertion, Defendant argues all tasks require two arms because every task must be completed in the most "efficient and effective and safe way" possible and Plaintiff cannot simply "pick[] and choos[e]" which tasks he will complete with his right arm only. (Tr. at *10.) But, Plaintiff has worked as a Floater for eight years and the record does not suggest his performance was inefficient, ineffective, or unsafe—in fact, it seems he performed just as well as other Floaters. (ECF No. at 72-2 at Pg. ID 797.) Thus, if a reasonable jury finds that Plaintiff in fact performed some of the tasks using his right arm only, it follows that not all of the quality inspection tasks required the use of two arms.

Notably, a finding that Defendant performed at least one task with his right arm only could be supported by the fact that Defendant moved Plaintiff from Door Line to BSR on May 2, after Plaintiff complained of pain. He stayed at BSR for the remainder of that day, without complaint. The next day, Defendant again moved Plaintiff from Door Line to BSR, where Plaintiff—again—remained without complaining of pain. (*Id*. at Pg. ID 780-81; ECF No. 72 at Pg. ID 734-35.)

This serves as strong evidence that not all tasks required the used of two arms. Thus, a reasonable jury could find that the use of two arms is a non-essential function and Plaintiff was "otherwise qualified."

*Did Defendant Fail to Accommodate Plaintiff's Reasonable Accommodation Request?*

The Court's analysis as to Plaintiff's reasonable accommodation claim begins with whether Plaintiff in fact requested an accommodation.

Defendant argues that Plaintiff did not make an accommodation request. (ECF No. 72 at Pg. ID 748.) However, Defendant concedes in its brief that Plaintiff claimed to be able to work some tasks with his right arm only. (*Id.*) In fact, Plaintiff made this claim during the same meeting in which Defendant told Plaintiff no work was available within his medical restriction. (ECF No. 72-2 at Pg. ID 780-81, 790.)

In *Smith v. Henderson*, the Sixth Circuit found that, even though the plaintiff's letter did not use the word "accommodation" or specifically mention that the plaintiff sought to delegate a task because of her disability, the plaintiff made a request for accommodation because "[t]he context in which the letter was written permits an inference that [the defendant] knew or should have known that [the plaintiff] sought to delegate [the task] in order to make her job conform with her medical restrictions." 376 F.3d 529, 535 (6th Cir. 2004). Here, a reasonable jury could infer that Plaintiff's claim that he was able to do some of the tasks with his

11

right arm only—made during the meeting in which Defendant stated no work was available within his restriction—constituted a request for reasonable accommodation that triggered Defendant's obligation to participate in an "interactive process" with Plaintiff as to potential reasonable accommodations (i.e., determining which of the tasks could be done with only one arm).  *See Morrissey v. Laurel Health Care Co.*, 2019 WL 6486841, at *7 (6th Cir. Dec. 3, 2019) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1103-04, 1109 (6th Cir. 2008) (holding that the defendant failed to accommodate an employee based on the employer's refusal to allow her to use a stool on the same day she requested to use the stool, and the employee left during the shift)).  Defendant's conclusion at that time that all tasks require two arms did not make Plaintiff's accommodation request something other than what it was.

Defendant further argues that, even if Plaintiff requested assignment to quality inspection tasks requiring the use of only one arm, such a request was unreasonable because all tasks require the use of two arms.  The Court finds that resolving the fact issue of whether two arms is an "essential function" of the Floater position will also resolve the question of whether Plaintiff's accommodation request was reasonable.

Because a genuine issue of material fact remains as to whether *all* quality inspection tasks require the use of two arms, it remains unclear whether two arms

12

is an "essential function" of the Floater position and whether Plaintiff was "otherwise qualified." Thus, the Court finds summary judgment inappropriate as Counts I and II.[1]

## COUNTS III & IV:
## VIOLATION OF THE ADA & PDCRA
## (RETALIATION)

Plaintiff argues that Defendant further violated the ADA and PDCRA when it retaliated against him by placing him on medical leave on May 3, 2016, the same day Plaintiff requested accommodation for his disability. (ECF No. 77 at Pg. ID 1230.)

A plaintiff may demonstrate a *prima facie* case of retaliation by showing: "(1) that plaintiff engaged in a protected activity; (2) that the defendant had knowledge of plaintiff's protected conduct; (3) that the defendant took an adverse employment action towards plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (citation omitted). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Id.* (citation omitted). If the plaintiff makes out this *prima facie* case, the burden shifts to the employer to produce a legitimate,

---

[1] Because the Court finds this argument defeats Defendant's Motion for Summary Judgment as to this claim, it does not address Defendant's and Plaintiff's remaining arguments.

non-retaliatory reason for its action. *Hamilton v. General Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009). Assuming that the employer is able to produce such an explanation, the burden shifts back to the plaintiff to put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual. *Id.*

The Court addresses the first, second, and fourth elements at the outset. Assuming a jury finds Plaintiff made a request for accommodation as discussed regarding Counts I and II, this request constitutes a protected activity. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (citations omitted) ("We have held that requests for accommodation are protected acts."). In addition, Defendant does not dispute that it had knowledge of Plaintiff's accommodation request or that there was a causal connection between Plaintiff's accommodation request and his placement on medical leave. (*See* ECF No. 72 at Pg. ID 748-751 (claiming no knowledge of Plaintiff's May 10 EEOC Charge but not his May 3 request for accommodation).)[2]

As to the third element, Defendant argues that placing Plaintiff on involuntary medical leave does not constitute an adverse employment action. (*Id.* at Pg. ID 750.) However, contrary to Defendant's contention, the Sixth Circuit

---

[2] During the November 12 hearing, the Parties agreed that considering whether Defendant retaliated against Plaintiff for his May 10 EEOC Charge is not required to resolve this claim. (Tr. at *51.)

14

"has previously rejected the rule that only 'ultimate employment decisions,' such as hirings, firings, promotions, and demotions, can be materially adverse for the purpose of a Title VII retaliation or discrimination claim." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (citation omitted); *see White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 801 (6th Cir. 2004) (en banc) (holding that an employee's suspension without pay for over a month was materially adverse even though she was later restored to her position with back pay), *aff'd on other grounds*, 126 S.Ct. at 2415 (ruling that an even lower standard for material adversity applies in the context of retaliation claims)).

Here, Defendant eliminated Plaintiff's work hours and responsibilities. *But see Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (finding that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions"); *Michael v. Caterpillar*, 496 F.3d at 595 (suggesting no adverse employment decision where performance plan did not "significantly alter [] responsibilities, pay, or work hours"). And, though the record is not clear on this point, it is unlikely that the benefits Plaintiff received equaled his ordinary pay. *Id.* Based on this, a reasonable factfinder could conclude that Plaintiff meets the relatively low bar for showing an adverse employment action.

Defendant also contends that the retaliation claim is barred because Plaintiff failed to exhaust his administrative remedies by first presenting the complaint to the EEOC: Plaintiff checked the boxes for "race" and "disability" discrimination—not "retaliation." (ECF No. 72 at Pg. ID 748-49.) In response, Plaintiff points out that that where "plaintiff alleged facts to the EEOC which clearly included retaliation allegations" and "plaintiff was not represented by legal counsel" when writing the EEOC Charge, "such a plaintiff should not be precluded from bringing a retaliation claim in the complaint." *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 527-28 (6th Cir. 2005) (citation omitted).

Defendant does not respond to this argument in its reply brief but the Court is nonetheless persuaded by Plaintiff's argument. The Parties do not dispute that counsel did not represent Plaintiff when he filed the EEOC Charge and the Sixth Circuit has made clear that "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to [the] defendants." *Id.* at 528 (alteration in original) (citation omitted). In *Tisdale*, the plaintiff alleged that "he was terminated after complaining about the treatment of African-American employees in a public meeting" and the Sixth Circuit found that the plaintiff's claim would not fail simply because he did not check the retaliation box. *Id.* This is because the "discrimination claim and his retaliation claim contain the same common core of operative facts." *Id.* Here, the case is the same:

16

Plaintiff argues that Defendant placed him on involuntary medical leave after he requested an accommodation satisfying his medical restriction. Because Plaintiff stated in the EEOC Charge that he was told "no work [was] available for [him], he should "not [] report to work" as he "would be placed on workmen's compensation," and he believed that his request for accommodation played a role, (ECF No. 72-18 at Pg. ID 1124), "a seasoned EEOC investigator would be naturally prompted to investigate the uncharged retaliation claim despite the procedural shortcomings in the formal charge," *Tisdale*, 415 F.3d at 528.

In sum, Plaintiff makes out a *prima facie* case of retaliation as a result of his request for accommodation, so the burden shifts to Defendant to produce a legitimate, non-retaliatory reason for its action. *See Hamilton*, 556 F.3d at 435. Defendant produces none. (ECF No. 72 at Pg. ID 748-751; ECF No. 94 at Pg. ID 1457.) Defendant is not entitled to summary judgment as to Counts III and IV.

### COUNTS V & VI: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT & ELCRA (RACE DISCRIMINATION)

Plaintiff claims that Defendant violated Title VII and the ELCRA by discriminating against him on the basis of race when assigning jobs, when providing training opportunities, and by placing him on involuntary medical leave. (ECF No. 77 at Pg. ID 1235.) Under both statutes, Plaintiff may carry his burden of persuading the factfinder that Defendant discriminated against him by

introducing either direct evidence or circumstantial evidence. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Plaintiff does not proffer any direct evidence of race discrimination. (Tr. at *55.)

When analyzing circumstantial evidence, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (citation omitted); (*see also* Tr. at *57). Before the burden shifts to the employer, a plaintiff must establish a *prima facie* case of discrimination by showing that: "(1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Id*. at 707.

Assuming Plaintiff satisfies the first three elements, the critical question of whether Defendant treated Plaintiff differently than similarly-situated, non-protected employees remains. Plaintiff attempts to show that he was treated differently than similarly-situated, non-protected employees by pointing out that Mr. Wyka allegedly (i) placed Plaintiff in an assignment with only four days of training, while Caucasian employees were given 30 days of training and (ii) provided favorable assignments to Caucasian employees, though Plaintiff was more senior. (ECF No. 77 at Pg. ID 1236-37.) This showing falls short.

18

The Sixth Circuit has explained that to be "similarly-situated," the individuals with which Plaintiff seeks to compare his/her treatment must (i) "have dealt with the same supervisor," (ii) "have been subjected to the same standards," and (iii) "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *McMillan v. Castro*, 405 F.3d 405, 413 (6th Cir. 2005) (citing *Mitchell*, 964 F.2d at 583).

Here, Plaintiff makes only general allegations that he was treated differently than "Caucasian employees" and does not provide sufficient information or analysis to establish that these "Caucasian employees" were similarly-situated employees. In fact, Plaintiff does not provide any specific facts regarding the "Caucasian employees" and conceded as much during the November 12 hearing. (Tr. at *59-61; ECF No. 72-2 at Pg. ID 773, 786); *see also Nolen v. FedEx Servs.*, No. 13-6245, 2014 WL 12887530, at *3 (6th Cir. May 28, 2014) (finding no circumstantial evidence of race discrimination where plaintiff "pointed to no *specific* similarly-situated white employee who received preferential treatment" (emphasis added)).

Plaintiff further argues that circumstantial evidence of race discrimination exists in that (i) Mr. Wyka allegedly refers to black employees by pronouns like "they" and "them"; (ii) Mr. Wyka allegedly refers to Plaintiff as "it" and

19

"Cyborg"; and (iii) an internal FCA report contains information about other African-American's discriminatory experiences with Mr. Wyka. (ECF No. 77 at Pg. ID 1236.) But, these assertions, even if true, do not move Plaintiff closer to meeting his burden of identifying a similarly-situated, non-protected employee who was treated better than him.

Because Plaintiff has failed to raise a genuine issue of material fact as to whether he was treated differently than similarly-situated employees, the Court grants Defendant's Motion for Summary Judgment as to Counts V and VI.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Strike Declaration of Undisclosed Witness (ECF No. 97) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 72) as to Counts I, II, III, and IV is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 72) as to Counts V and VI is **GRANTED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 18, 2019